JAMES CONLAN

*v.*

MAURICE A. MEAD *et al.*

*Opinion filed February 14, 1898.*

1. NEW TRIAL—*what must appear to entitle party to new trial on ground of newly discovered evidence.* To entitle a party to a new trial on the ground of newly discovered evidence it must appear that due diligence was used to discover and produce the evidence at the trial, and that the evidence is conclusive, and not merely cumulative.

2. SAME—*new trial is not granted to enable party to make somewhat stronger case.* A new trial should not be granted to enable a party to make a somewhat stronger case on a second trial by introducing evidence corroborative of that given on the first.

3. EVIDENCE—*admissions of one alleged partner not admissible against the other until existence of partnership is shown.* Where one of two or more persons sued as partners denies the partnership by proper plea, the admissions or statements of his alleged co-partners, made in his absence, with reference to the partnership, are not admissible against him unless the partnership has been otherwise shown.

4. SAME—*admissions of an alleged co-partner admissible to strengthen prima facie case.* Where, in a suit against two or more persons as partners, sufficient evidence has been introduced to raise a fair presumption of the existence of the partnership, the acts and declarations of each are admissible against the others to strengthen the *prima facie* case already made.

*Conlan* v. *Mead,* 70 Ill. App. 318, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JONAS HUTCHINSON, Judge, presiding.

This was an action of assumpsit, brought by appel-
lees, a firm known as M. A. Mead & Co., against William
I. Watson and James Conlan, a firm, as is claimed, known
as W. I. Watson & Co. The action was brought by suing
out a writ of attachment, which was levied on certain
property. The declaration contained the common counts,
to which the defendant Conlan filed a plea traversing the
grounds for an attachment set up in the affidavit. He
also pleaded the general issue, and filed a plea denying
joint liability with the defendant Watson, which was
duly verified. Issue was taken on the pleas, and on a
trial before a jury all the issues were found in favor of
plaintiffs and a verdict for the amount claimed was re-
turned, upon which the court entered judgment. The de-
fendant Conlan appealed to the Appellate Court, where
the judgment of the Superior Court upon the issue in
attachment and the award of special execution were set
aside and the judgment in assumpsit for the amount of
the debt was affirmed. To reverse the latter judgment
the defendant, James Conlan, has appealed to this court.

THOMAS J. WALSH, for appellant.

.EDGAR L. JAYNE, for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The principal contest in the Superior Court was over
the question whether the defendant Conlan was a member
of the firm of W. I. Watson & Co., and, as such, liable for
the debts of the firm. Upon the application of the appel-
lant the jury returned answers to interrogatories on the
question of partnership, as follows:

"Did the defendant Conlan agree with defendant Wat-
son to form a co-partnership?"—Yes.

"Did the defendant Conlan so conduct himself as to
induce the plaintiffs to believe that he was a partner of
defendant Watson?"—Yes.

The finding of the jury in the Superior Court, having been followed by a judgment of the Appellate Court affirming the judgment of the Superior Court, settles the question of fact against appellant. It will therefore only be necessary for this court to determine whether the ruling of the Superior Court during the progress of the trial conformed to the law.

It appears from the record that the firm of W. I. Watson & Co. was originally composed of two parties— Watson and A. G. Laubengayer. On February 15, 1893, Laubengayer executed the following paper:

*"February 15, 1893.*

"For and in consideration of $400 to me in hand paid, receipt of which is hereby acknowledged, I sell, convey, transfer and assign all my interest and title in and to the assets, stock, fixtures and accounts, and all belongings of the firm of William I. Watson & Co. and Queen City Watch Company, to James Conlan, and said James Conlan hereby assumes my share and liability in the liabilities of said above mentioned firms.

Alfred G. Laubengayer.

"Witness:—May Troughton."

At the time the paper was executed, Watson, Conlan, Laubengayer and one Peck were present. Peck was called as a witness for plaintiffs, and among other things testified as follows: "I was introduced to him (Conlan) as the successor of Mr. Laubengayer in this business. I asked Mr. Conlan at the time if he was going to engage in the business, and he said he thought he would try his hand at it."

On the application for a new trial Conlan filed his affidavit, in which he stated: "That on the trial the material questions of fact were whether this affiant had formed a partnership with his co-defendant, and whether this affiant had held himself out as a partner of his co-defendant; that on said trial one Moreau Peck testified on behalf of said plaintiffs that one Alfred G. Laubengayer had introduced to said Peck this affiant as his successor in business; that said Peck asked this affiant if he

was going into the jewelry business, and that this affiant had answered that he was going to try his hand at it; that the said testimony of Peck was the strongest testimony given on the trial of said cause in support of the above mentioned issues therein; that since the trial of the said cause this affiant has learned that the Alfred G. Laubengayer above mentioned will testify that he has no recollection that he introduced this affiant to said Peck as his successor in business, and that he did not hear the said Peck ask this affiant if he was going into the jewelry business, or this affiant reply thereto that he was going to try his hand at it. Affiant further states that at the time said cause was tried the said Laubengayer was a non-resident of this State and resided at Owasso, in the State of Michigan, and has not, during or since said trial, been within the jurisdiction of said court to the knowledge of this affiant; that this affiant was taken by surprise by the testimony of said Peck, and had no means of compelling the attendance of said Laubengayer at court." The affidavit of Laubengayer was also filed, in which he says, in substance, that he has no recollection of the conversation testified to by the witness Peck. The court denied the application for a new trial predicated on the affidavits, and this ruling is relied upon as error.

The rule is well settled that in order to obtain a new trial on the ground of newly discovered evidence it must appear that due diligence has been used to discover and procure the evidence on the trial, and that the newly discovered evidence is conclusive in its nature, and not merely cumulative. (*Plumb* v. *Campbell,* 129 Ill. 101.) Under the rule established in the case cited it is apparent the application for a new trial was properly overruled. The principal contest on the trial was over the question whether Conlan was a partner in the firm of W. I. Watson & Co. Much evidence was introduced by the respective parties on that question, and it is apparent that the evidence of Laubengayer sought to be obtained and in-

troduced was merely cumulative. Moreover, while the evidence of the witness, if produced on another trial, might add some additional weight to the evidence of appellant, it could by no means be regarded as conclusive. New trials cannot be granted to enable parties to make a case somewhat stronger on a second trial. If they could, there never would be an end to litigation.

It is next claimed that appellees' instruction No. 5 is erroneous in informing the jury that they are "at liberty to consider the statements and representations of W. I. Watson, as bearing upon said partnership, which were made by him, provided the jury first find, from the evidence, that the said James Conlan, by his own words or conduct, held himself out as a partner of said firm, and that the plaintiffs had notice thereof and acted thereon." We do not regard the instruction as entirely free from criticism, but we think the principle announced is substantially correct. Where an action is pending against two as partners, and one of the defendants puts the fact of partnership in issue by proper plea, the admissions or statements of his co-defendant, made in his absence, in reference to the existence of the partnership, are not, in the absence of other evidence tending to establish a partnership, admissible upon the issue. (*Hahn* v. *St. Clair Savings and Ins. Co.* 50 Ill. 456.) But where sufficient evidence has been given to raise a fair presumption that two or more persons are partners, then the acts and declarations of each are admissible as evidence against the others, for the purpose of strengthening the *prima facie* case already established. (Lindley on Partnership, 86, 87; 1 Greenleaf on Evidence, sec. 177.) If Conlan, by his declarations or acts, held himself out as a partner of the firm, as declared in the instruction, a *prima facie* case was established, and then the declarations of Watson, the other partner, were admissible. We think the principle announced in the instruction was correct, and the jury could not have been misled by it.

172—2

It is also claimed that the court erred in refusing instructions asked by appellant. Upon an examination it will be found that the substance of the first refused instruction is embraced in appellant's instruction No. 6 given, and for this reason it was not error to refuse it. The second refused instruction leaves out of view entirely the fact that Conlan held himself out as a partner, and for this reason it was properly refused.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*